May it please the court, ladies and gentlemen, I'm James Daley. I'm an attorney from Newport Beach. I do fiduciary abuse litigation. I'd like to reserve five minutes and my client is L.A. Tech. The lower court made an error. It's blatant right on the face that he had two times he could fix it and he still felt that receipt of stolen property required knowledge of its receipt at the time you received it in order to be responsible or liable for withholding or concealing stolen property and that's not the law. The purpose of 496 is something that I use almost every day since 2013 when the Bell case came out. You see, 496 allows people to take on cases that aren't prosecuted by the police. They might say, well it sounds like a civil matter and the AUSA may not take the case because it's not more than five million dollars. So it allows for individuals and I live in an area of, you know, it's like that movie Dirty Rotten Scoundrels. It's like a con man every five minutes and people don't have a way to even hire an attorney to take a case. But now we have 496 and I use it in every case that I have. I've sued banks, all sorts of places. I've never ever had a case dismissed on pleading. The pleading itself is so straightforward. You know, there's so many different ways that you can show somebody stole something. They have it all in one Uber provision of California Appeal Code. It's 484. And they combine all the different larceny, all the different things in that. And that is incorporated in 496A. And 496A says every person who buys or receives any property that's been stolen or has been obtained in any matter constituting theft, knowing it was so stolen or obtained or who conceals it. Basically, at some point, somebody who stole something finds out that what they, I'm sorry, somebody who received something finds out that what they received was stolen. Let me ask you this. What's their obligation? How does the statute work in the following hypothetical case? Not your case. Fair enough. Somebody steals $200, walks down the street and buys a used bicycle from me. I have no idea that the money has been stolen. I take the $200 cash. I give him the bicycle. And five minutes later, the guy who's stolen the money stolen from comes down to me and says, I'd like my $200. Do I have to give it back? Well, I think that that's the thing. Eventually, you as the person who just bought that bicycle. No, I sold the bicycle. You sold the bicycle. And I got $200 that had just been stolen from this guy who's come down to say, hey, I'd like my money. And I say, well, wait a minute. I have no idea. I'm a bona fide seller. Well, so the person is, it's different. You sold something and received $200 that was stolen. So you received it. Now you're aware that it was stolen. And I'm sorry that you have a claim against the person who the $200 that I just received when I just sold my bicycle. Yes. And if you want to dispute that, then the law says, well, you can. You can dispute it, but you're going to owe me $300. It sounds like I'm going to lose. Yes. But you have a case against the person who stole it. Now, in American Express, he's long gone, as are Mr. and Mrs. Dole in this case. But the thing in this case is American Express knows who the heck that person is. They know very well. And American Express is the party that took our money. You know, you go to a bank and send a wire. You might fill out some paper, but it's the bank that actually does the transaction. You have to go through managers and all those things. They do it. And every one of the things listed in paragraph 40 of our complaint shows the first entry is who. It's American Express. They're the ones doing it. The elements are that the property was stolen, that the defendant knew it was stolen, that the defendant received the stolen property. So are there any cases that have interpreted when the defendant knew that it was stolen? Because at the time the transaction occurred, Amex didn't know that the money was stolen. So if you think about it, as far as cases go, I believe every case that could be on point was cited in our case. So your answer is no, there aren't any cases? Well, no, because the Schroeder case itself is a case where a guy steals some drugs from a drug store. And the issue is that he is able to, that the prosecution can prove that he knew it was But not in pleading. We're just, we're at the pleading stage. I haven't been able to do any discovery. Did you plead anything to indicate that Amex should have known it was stolen? No, it's not that they should have known. It's that they must have known. And yes, they must have known. In fact, so what did you plead to show that they must have known? All the paragraphs that go through how they set the system up, how they themselves transfer the money. Mind you, that 496A says that a principal in the theft may be convicted pursuant to this section. What I'm getting at is theft, there's so many different ways to do it. Larceny. Go back to law school. What's larceny? Four elements. Defendant took possession of property owned by someone else. Check. They did. The defendant took property without the owner's consent. Check. They did. Here's the criminal intent required of theft. When defendant took the property, they intended to deprive the owner of it There was no other intent. They took the money, they still have it. And then we need aspartation, of course, that last element. And that is that the defendant moved the property ever so slightly. If I prove that, which by the way, are in the elements and all in the pleading itself, paragraphs 13, 23, 24, 25, that shows defendant took my property, they didn't have my permission, they moved the property and they still have it. So Amex regularly collects online payments from customers through an online payment system. That's what you have alleged in your complaint. But how does that put them on notice that this money was stolen? Well, if you if you're to, if you are of the opinion that there's no way they knew it was stolen when they took it from my client's account, they took it from my client's account. How did they know initially? It's not my client's name on it. It's not anybody else's. They're taking it from LA Tech's account. They're not taking it from whoever it is that's out there. They took it from my account. They don't, they haven't done anything to find out whose account it is when they're taking the money. They don't have permission from my client. They've never sent him a bill. When my client actually tries to reach out and send him a letter, they don't respond. They have to sue, be my letter, my letter. So now I get this case, I send a letter off to him. Here you go. The judge in the lower court, because he misconstrued the, misconstrued the, the, the standard, felt the letter didn't matter because they didn't receive the money at the time that it was given to them. They didn't know it was stolen at the time it was given to them. But that, that later acquired knowledge means you have to give it back. I'm sure, you know, in, in, uh, your honor, uh, uh, your idea, the person that took my client's money, if he knew it really was my client's money at some point, I would think he would feel bad that, yeah, you know, I, I'm the one that got ripped off. So counsel, let me jump in here. So I, I, I understand your argument as to withholding stolen property or concealing stolen property, because you're saying once the letter was received by certainly knew once the letter that there was, that there was an issue. Correct. Okay. So I, I get that. I am having trouble though. So that claim, I understand. I'm asking Amex counsel, a lot of questions about that claim, but as to the receipt one, I mean, the theory is that it's almost like there's a negligence that the Amex system was just constructed in a way that because it could, this could happen, therefore they're liable when it does. Well, they could very well be an aider and a better because often banks, even in their normal standard businesses do aid in a bet criminals in, in this, that's why we have the, the ALM requirements, you know, and money laundry. Right. But, but it seems to me that the problem in this case was as to the, the stole, the initial theft. Yes. The letter's a different story, but as to the initial theft, it seems like your client's own financial institution was the one that let the money go without the proper restraints. Is there an action against them? No, there isn't. Well, it seems to me if, if I'm at a bank of America and all of a sudden someone scoops in and takes my money out of bank of America, I'm pissed at bank of America. Isn't that where the action should be? I just know that they got my money. They're the ones with it. Right. But, but the bank is the one that's entrusted with, they have the duty to the client to make sure the money doesn't leave unless certain protocols occur. And all of a sudden the money's gone. So counsel there would argue, well, it's a debtor creditor thing. And therefore there's some sort of no conversion, no way to get it. I went after the person who actually has my client's money. I know where it is because I have the receipts that show it. My client didn't go after his own bank. Would that he could, but he didn't. By the time he got to me, this was, this is what, what we pursued. The money was at American Express. We went to American Express. By the way, all of this idea of, well, we didn't know, that's a defense to theft. They have the ability at, so, so if I prove all those four elements of theft, by the way, it's straight up. The intent was just to take the property. They had that. That's theft. They stole it. And under 496, they're responsible for receipt of stolen property because their intent at the time was to take my client's money and they didn't have permission. They have a defense to that. Does the statute differentiate in terms of what constitutes property between money and other intangible property? Or is money just the same as if you received a stolen refrigerator? It is. The California rule on property is it's expansive. It's everything. And it does include some money and chattels and all sorts of good stuff. I'm at my time. I, do you want to reserve? I would like to reserve. Yes, sir. Last part was that, was on conversion, which is the same elements. They, my client owned the property. They substantially interfered with it. They took possession. He did not consent. He was harmed. And their conduct was a substantial factor in that. That's, that's conversion. I'll talk to you in a few minutes. Thank you. All right. Good morning, Your Honor. Brian Frantino, Morgan, Lewis, and Bakkeus for Apelli American Express. And may it please the court. First of all, I wanted to point out that Justice Fletcher made a very good point about this. This is a very old joke. This is not the California Court of Appeal. There is no justice on the Ninth Circuit. We're judges. Judge, Your Honor, thank you. Thank you for correcting me. Don't call him author. I didn't call him author. And you haven't authored anything. I shouldn't make light of this. Judge Fletcher, you made a, you made an excellent point with your hypothetical. Because essentially what American Express is, is a payment processor for merchants. And so all of these, all of these transactions are happening by the card member. And then payments are being made along the way. And so, like you said, American Express is the seller of that good, the bicycle, in that instance, just because it's... But the answer that he gave me is the seller of the bicycle is on the hook for the 200 bucks. Yes. And we, of course, don't agree with that. I bet you don't. Yeah. So, but I would actually like to start with discussing Appellant's conversion claim for a couple of reasons. In their reply brief, Appellant seems to misapprehend the argument that we're trying to make. Because in order to illustrate why conversion does not apply under these circumstances, we set forth the well-established law in California that when a, when a depositor deposits funds in a bank, those funds become the property of the bank. And the bank is then indebted to the depositor for the amount that's on deposit. And so here, that would be Chase. And so, because of that, that is why American Express, as a third party, can't interfere. If the depositing bank can't convert those funds because they have title to it, then the third party, American Express, also can't convert the property because it's Chase giving it to them, not LA Tech. And I, and, you know, American Express is this third party who's receiving these monthly payments, month after month, ten, fifteen, twenty thousand dollars, in the ordinary course. And there's no indication anywhere that these are stolen funds until counsel comes along and sends American Express a letter saying these funds are stolen. And then after the receipt of the letter, your client retains the money. Correct. And so how can you do that consistent with 496? Because at that point, all we have is a letter saying that there's an allegation that this is theft. I mean, for all we know, this could be a business dispute. So, well, but if you get proof now, I mean, you're still hanging on to the money. The fact that this, this part of the argument is not that you knew when you got it. Right. This part of the argument is after you got it, you learned and you still didn't give it back. So if your problem is the letter's not enough proof, how about if I give you a really good, irrefutable proof that even you will have to accept today? Are you, is your client still off the hook under 496? Well, I don't know what that proof would be. Well, no, assume that it's perfect. Perfect proof. Yep. A criminal conviction that someone admits in open court that they stole the money. I would say that that still is not sufficient under 496. Yes. Well, what needs to be shown? There's, this is not a, this, you cannot bring this claim for these types of transactions under 496. Because? Because there, it, because, well, it actually aligns with what we're saying about conversion and whose property we're talking about. Well, conversion requires a distinct, isolated, identifiable pot of money. Correct. This 496 does not, at least I don't see that it does. It doesn't, but what, what LA Tech is saying is that this is stolen property. But in this context, where it is a series of payments coming from a depository institution, we've already established that in that context, that's not a property interest of the depositor. So if I were Mr. Doe, and I, and I said it this way, if I can find Mr. Doe, and I say, you stole my $388,000, are you saying he didn't steal the money? I'm saying that he would have, he's been, he's been, he's a victim of theft from that individual, and he should sue that individual. No, no, no, I, I, let me make sure I ask the question. Okay. Mr. Doe is the guy who is responsible for all this money going into the Amex accounts. Correct. That's Mr. Doe. Let's say I catch Mr. Doe, which I gather on the facts of this case is unlikely because he's nowhere in sight. But let's say I catch Mr. Doe, and I say, you stole my money. Isn't that right? That he did steal my money? If he did, yes, but then. What do you mean if he did? No, I want this circumstance. Mr. Doe. Yes. Arranged for $388,000 to be taken out of my account and paid to Amex. Right. I now have Mr. Doe in my clutches, and I say, you stole my money. He says, I did not. Did he steal my money? He says he did not, then that is a dispute between them. No. Okay. Of course he says he did not, but I'm, I'm now into legal definition. He did exactly what's alleged that he did in this case. Okay. Did he steal my money? I don't know. Why don't you know? I mean. I had this money. It was my money in my account. Mr. Doe arranges that it evaporates and goes off somewhere else to his own benefit. And you say you don't know whether he stole my money? Well, I don't know if that's fraud. I don't know if it's a bad business deal. I don't know what the relationship is. Let's say I go into your bank account, and I take out $388,000 without your permission. Did I steal that money from you? On those facts that you just said? Yes. Okay. But I, but I guess my point is, that's not what happened. It wasn't that American Express went and took $388,000 and now has that on deposit somewhere. Those were a series of payments over two years that plaintiff outlines in his complaint in a table. There's 23 transactions. The charge is not that Amex stole the money. The charge is that they received and retained stolen money. Yes. And I would say, and our position is, even to this day, we do not know that that money was stolen. Isn't that the problem that this case was dismissed at the pleading stage? And isn't that why we would then proceed to discovery? No, because just the out, just, just suspicion or that ordinary course payments were made is not sufficient to plausibly allege that American Express knew that the money was stolen either when it received it or when counsel wrote a letter to American Express. It's not when it received it. There's an allegation here that they sent a letter to American Express saying this is, this money was stolen. I'm just, I'm not sure when you could ever get past the pleading stage under your reading of the statute. When could someone ever bring a case under your view of the statute? Never? No. So, so I don't think you can. So, so, so California wrote a statute and you're saying it could never be activated in any way? Not in this context. In any way? So there's a case and there's a case from the Northern District involving Apple gift cards where Judge Davila said you can. Very similar facts to this. I don't know. I didn't see the case cited in your brief. I don't know if you want to comment on it. But you can't imagine a scenario where this, where it would come into place. I, I actually have a case where gift cards are at issue and the, the card member purchased a bunch of gift cards that he thought he was helping the FBI uncover this gift card scam. And he now wants the money back from the card issuer. And you, you can't get it because you, you engaged in those transactions. You allowed them to happen. But, but that's not what these transactions were reflected on the bank statement. But, but, okay. But again, now you're getting into factual about whether they should have, should have known or don't know. I'm saying as a legal matter, can you help us out here? Right. You're trying to say you should win. Normally when you, when you want to win, you don't want to say, and there's no possible way we could ever lose. Right. You have to give us a scenario where someone could be liable under 496 under a receipt situation. I can't in the credit card payment context. I don't think it applies in this context. So just period. Yes. Would Amex be liable under this statute if somebody had walked into Amex, owed a debt to Amex, I'm not sure how the debt arose, and gave them $100,000 that had been stolen from the other Yes. Potentially. Yes. So I guess maybe if I explain it this way, for example, if, if LA tech had caught these payments along the way and said stop and return them, there is a possibility that they would have been able to get them back. What do you mean along the way? It was a very long way, but they did. It was after two years. And they said, listen, that was our money. We would like it back. Correct. And there is a way through the automated clearinghouse process to request payments back that are unauthorized. But your client says we're not giving it back. They didn't make that request. They made it through, their counsel sent a letter to American Express. That's not how that process works. American Express doesn't write checks. It only goes back through the automated system. Of course they do, in certain circumstances, when the facts require it. But here it doesn't. And it's not a penal code violation of 496. I guess it's not. I mean, I don't really know how else to explain it. It just, in this, in the ordinary course of payments, there's nothing to suggest that these third party payments were suspicious, were, you know, was the result of theft or anything like that. And then to show up on the doorstep and say, these, anybody, I, my wife could call our bank and say, or I could call my bank and say, all these payments on my wife's credit card account were stolen for over the last two years. I mean, anybody could do that. Anybody could send a letter saying this. There's a process where you can dispute the charges and the credit card company investigates it. And if it's a fraudulent charge, they return it. Correct. But you're saying that can't happen here. It can through the which you brought up. You're saying through Chase? Yes. So you're saying in this case, even though Amex is the one who took the money, correct? They didn't take, I mean, they received the money. The payments were initiated and. Initiated by, on which side, by the Chase side or the Amex side? The card member initiated the payments. So the card member being LA Tech? No, the card member, Amex's card member, whoever that was. So, so something came from Amex to initiate these? A request, yes. Here, we've, we are permit, you know, here's a request for payment. So send it over and Chase sends it over. Right. And so I think you're, Judge Owens, you pointed it out when counsel was, was arguing that why aren't you going to Chase? And he said, well, we can't. Well, right. And so unfortunately you can't now bring a 496 claim against American Express. That's not, that's not how this works. That's what you say. That is what I'm saying. Now, now go ahead. And Judge Carter. So the money has moved through Amex and you no longer have the total amount? Sure. Because did Amex have any of that amount when the letter was sent? I don't know. I mean, as I was saying, you know, in the credit card context, you are, Amex is paying merchants as charges are being made and then getting the payments on the account. So the money's already gone. I mean, it's, it's, it's being repaid along the way. I'm just trying to make sure I understand your decision. So again, I'm gonna put this in terms of not money, but tangible objects. It's probably easy for me to understand that. So let's say I, my wife's diamond ring is stolen and we find out it's in a safe deposit box at, at Bank of America. So we notify Bank of America, Hey, the ring is in safety box, safety deposit box 20. And we prove it's our ring. We have a videotape of the guy stealing it. We videotape the guy going into the bank. No doubt about it. Yes. Would the bank have an obligation to return the ring? Yes. How is that different in this case? Because for this, as I was saying, these are ordinary payments in the ordinary course. You don't, you don't have that. You don't have a proof that this was stolen. You don't have the video of the person stealing it. Let's assume we do have all that. We, like I said, we started off with a written confession of someone admitting, yes, I, I am John Doe. I'm the one who initiated these transactions. I had a friend at Amex. The friend at Amex was helping me do it. That's how this happened. Okay. Maybe in that context. So then there is an action under 496 involving banks. Perhaps I have not seen that. And I do this all the time. It's a different question what you've seen and what you know. Right. So, okay. So, so there is a hypothetical that there is, you can envision a situation where 496 could apply in a there was perfect proof. Yes, I suppose that's a possibility. But how would we know that at this pleading stage? Because there's been nothing to plausibly allege that you would have that. But, but, but I know, I know Twombly is, is, uh, and Iqbal are wonderful cases that Supreme Court gave us, but it seems to me here that I understand your argument. And again, this is, you know, maybe my argument is more with, with what Twombly and Iqbal say, but, but I appreciate where you're going with this one. Okay. Um, just want to see if there was anything else I wanted to add in my last 30 seconds. I mean, I, you know, Judge Schreier, you asked, you know, what are the cases on point? And in our view, the most analogous cases are, of course, the Reno Roley case against American Express in the California Superior Court, where it was the same thing. A letter came from counsel saying this money was stolen. And the Superior Court said that's not sufficient to support the allegation that American Express had knowledge that the money was stolen. And then we also have Freeney v. Bank of America in the Central District of California. And there, Bank of America was sued because it opened a deposit account in Miami Beach for a restaurant in Los Angeles where millions of dollars were flowing in and out. And plaintiff there alleged Bank of America opened the account without required documentation and some of the similar things that counsel said. And even there, that was the depository institution who has visibility into the deposit account. And they said, most, you've alleged negligence. You certainly have not alleged knowledge of stolen property under 496. Thank you. From the last 15 minutes, we can see that there's a dispute about knowledge, and there's been no discovery. And disputes about knowledge are issues for the jury. They're not for us to decide right now. Did we allege it? We alleged it. Is there knowledge? I've alleged they knew about it. They took it. They've done it. The issue that was raised about— You know, you keep going back and forth between they knew at the time they received it and they knew when they got your letter. I'm speaking only for myself. I don't see there's enough here to show, even with allegations, that they knew at the time they received it. You're not alone on that. Okay. I want to go back to the idea of theft. And the paragraph of 496A, which literally says at the bottom of it, if you see the statute, there's a subparagraph in it. It says, a principal in the theft of the property may be convicted pursuant to this section. California has these jury instructions on theft, and it's straight up. What is the elements of theft? And it's those four things we learned in law school. It's just that the main thing about the intent was that you intended to deprive the owner of it permanently. That's it. If I were going to plead, as a prosecutor, I'm going to plead somebody stole something of theft, I would plead that there was property owned by somebody else, the person didn't have permission and took it, and when they took it, they intended to take the property permanently. And that is it. That's all. And because those elements are actually stated in my complaint, all those things are in the complaint, then I have established in the complaint that the person who committed the theft is the person in receipt of it. But under that, every time Amex received a payment, it would qualify as theft under your analysis? Absolutely. Yes, it would. It would. It would. It would. It would absolutely be that. Why? Because they did. Anybody that takes property, anybody that takes property that isn't theirs and doesn't have permission is committing a theft. And in this case, the fact, by the way. But they would have to know that they don't have permission to take that property. They do know. How do they know? Because they don't have my client's permission. But that's half the retailers in San Francisco then would be liable for 496. They might be, but I don't know about them. And I have sued Bank of America, and I can't talk about what the result was, but I can tell you, I sued their pants off. This is, I sued banks on this all the time. And this absolutely is the case. By the way, they talked about a series of dollars and a pot of money. You thought that the money wasn't there anymore. It's a loan. They loaned him money. He spent it. They paid the people themselves. When he paid the money with my money, my client's money, it was in a pot of money. They hold it. They commingle it. I see my time's up. Thank you so much. Thank you both for your, this is a very interesting case, and I appreciate both of your perspectives on it. Thank you for the briefing and the argument today for both of you. This matter is submitted, and this particular panel is adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: FLETCHER, OWENS, Schreier